**Joseph Lee Matalon**
**MATALON ♦ SHWEKY ♦ ELMAN PLLC**
**450 Seventh Avenue, 33d Floor**
**New York, New York 10123**
**(212) 244-9000**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                              :

**THOR MILFORD RETAIL LLC,**         :

          **Plaintiff,**        :

       -against-           :     **15 CV _____ (___) & (___)**

**MILFORD GIFTS LLC,**           :     **COMPLAINT and**
                             :     <u>**JURY DEMAND**</u>

         **Defendant.**      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Thor Milford Retail LLC ("Landlord"), by its attorneys, Matalon

♦ Shweky ♦ Elman PLLC, for its Complaint against Milford Gifts LLC ("Tenant"), alleges:

<u>**NATURE OF THE CASE**</u>

      1.     This action seeks a declaratory judgment that Landlord is not liable under

the Lanham Act, 15 U.S.C. §1125, for infringement of Tenant's purported "distinctive trade

dress." Tenant has asserted that Landlord infringed on its "Trade Dress" by assisting a

competing souvenir store in the building to adopt a nearly identical "look and feel" as that of

Tenant. Tenant also claims that Landlord fraudulently induced Tenant to enter into the Lease by

assuring Tenant that Landlord would not lease space in the building to a competitor, and

Landlord seeks a declaration that the Lease was not fraudulently induced. Finally, Landlord also

sues for breach of lease and tortious interference with prospective business relations, based on Tenant's refusal to furnish Landlord with a proper estoppel certificate certifying certain matters (as required by the lease), and false and malicious statements that Tenant has potential claims and defenses to the lease, designed to defeat Landlord's efforts to obtain financing.  Finally, Landlord seeks to recover its reasonable attorneys' fees pursuant to the attorneys' fee provision of the lease.

2.      There is nothing unique or distinctive about Tenant's trade dress; most souvenir shops in New York City have a similar look and feel, due to the nature of the business. Indeed, the two stores at issue here are longstanding competitors, and the look and layout of their stores in Landlord's building is entirely consistent with their other stores elsewhere.   Nor did Landlord do anything to assist Tenant's competitor in implementing the look and feel of its store, as claimed by Tenant.  Further, Tenant's complaints about Landlord's alleged oral assurances about not renting to another souvenir store ring hollow and are barred by the express provision of the lease granting Landlord the right (in its sole and absolute discretion) to determine the uses to which other space in the building shall be put, and the parties' disclaimers of reliance on any representations not set forth in the lease.

3.      Tenant has asserted these baseless claims in it a fit of pique and not in good faith, knowing that unless Landlord procured a "clean estoppel" certificate, Landlord could not obtain the financing which it was seeking.  Rather than capitulate to Tenant's thug-like tactics, Landlord instead seeks legal redress herein.

## PARTIES

4.      Plaintiff is a limited-liability company organized under the laws of the State of Delaware and is authorized to do business in New York.

5.      Upon information and belief, defendant is a limited-liability company organized under the laws of the State of New York.

## SUBJECT MATTER JURISDICTION AND VENUE

6.      This action seeks, in part, a declaratory judgment pursuant to 28 U.S.C. § 2201, for the purpose of determining an actual controversy between the parties.

7.      Subject matter jurisdiction over the intellectual property claims is based on 28 U.S.C. § 1331(a) and the Lanham Act, 15 U.S.C. §§ 1114 et seq.   Subject matter over the remaining claims is based on 28 U.S.C. § 1376(a) (supplemental jurisdiction).

8.      Venue in this court is proper under 28 U.S.C. § 1391(a)(1) because defendant resides in this judicial district.  Venue is also proper under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTS

9.      Landlord is the owner of the retail unit condominium in the building known as 700 Eighth Avenue, New York, New York (the "Building").

10.      Tenant and its affiliates operate retail souvenir stores in New York City under the trade names "I Love NY Gifts" and "Phantom of Broadway."

11.      On or about April 7, 2014, Landlord and Tenant entered into a lease under which Tenant leased a portion of the ground floor of the retail unit in the Building (the "Premises").

**The Lease**

12.　　The Lease provides that the Premises shall be used for the retail sale of souvenirs and gifts (including as an ancillary use only, chocolates and wine) typically sold in a majority of other retail stores operated by Tenant and Tenant's affiliates located in New York City, together with, on an ancillary basis only, a café, and for no other purpose.

13.　　The Lease also requires Tenant to operate and do business under the trade name "I Love NY Gifts," "Phantom of Broadway" or any other trade name used by a majority of Tenant's stores located in New York City.

14.　　Notably, the Lease does not give Tenant the exclusive right to operate a souvenir and gift store in the building.  Directly to the contrary, the Lease states that Landlord reserves the right, in Landlord's sole and absolute discretion, to determine the uses to which other space in or in the vicinity of the Building shall be put.

15.　　Section 17.1 of the Lease requires Tenant, upon not less than ten (10) days' prior notice, to execute, acknowledge and deliver to Landlord a statement ("Estoppel Certificate") (a) certifying that the Lease is unmodified and in full force and effect (or if there have been modifications, that the Lease is in full force and effect as modified, and stating the modifications), (b) certifying the dates to which Rent has been paid in advance, (c) stating whether or not to the best knowledge of Tenant, the Landlord is in default under the Lease, and if so, specifying such default, and (d) certifying to such other matters with respect to the Lease as may be reasonably requested.  Section 17.1 further states that any Estoppel Certificate may be relied upon by any third party, prospective purchaser or mortgage of the Retail Unit or any part thereof.

16.     In addition, the Lease contains a "merger" clause, which provides in part:

SECTION 21.2.  Entire Agreement  This Lease contains all of the agreements and understandings relating to the Leasing of the Premises and the obligations of Landlord and Tenant in connection therewith and neither party nor any agent or representative of either thereof has made or is making, and neither party in executing and delivering this Lease is relying upon, any warranties or representations, except to the extent set forth in this Lease.  All understandings and agreements heretofore made between Landlord and Tenant relating to the leasing of the Premises are merged into this Lease, which alone fully and completely expresses their agreement.

**Tenant's Failure To Deliver The Estoppel Certificate**

17.     On or about August 25, 2015, Landlord requested that Tenant deliver an Estoppel Certificate certifying and stating the particulars set forth in Section 17.1 of the Lease. Landlord was required to provide the Estoppel Certificate to a prospective lender, Paramount Group Fund VIII 700 Eighth Mortgage LP (the "Lender") in order to obtain mortgage financing for the Retail Unit.

18.     Tenant failed to execute, acknowledge and deliver the Estoppel Certificate in the form furnished by Landlord, and refused to state that to the best knowledge of Tenant, Landlord is not in default under the Lease.  Rather, on or about September 3, 2015, Tenant provided a certificate that falsely stated that Tenant "may" have claims and/or defenses against Landlord as a result of Landlord's alleged fraudulent inducement of the Lease and for its alleged direct, contributory and/or vicarious infringement of Tenant's rights with respect to a competing storefront retail business that had been opened by a different tenant in the building, City Souvenirs On 8th Inc. ("City Souvenirs").  (Landlord had leased other space in the Building to City Souvenirs in December 2014, nine months before Tenant provided its estoppel certificate.)

19.     The certificate was accompanied by a letter from Tenant's attorneys which purported to set forth the basis for Tenant's potential claims and defenses.  First, the letter stated

that Landlord had given assurances that it would not place a competing business in the Building, but then permitted and continued to permit City Souvenirs to operate a competing souvenir store from another storefront retail space located on the same side of the Building.  Second, Tenant's attorney stated that based on "control" provisions in Tenant's lease (granting Landlord the right to approve in its reasonable discretion what shall be placed, displayed or stored on all exterior signage areas and the storefront of the Premises and the façade of the Building), Tenant had "reason to believe" Landlord may have approved and/or directed City Souvenirs to replicate the "unique and distinctive look and feel" of Tenant's locations in New York City ("Trade Dress"), resulting in ongoing damages.  The attorney indicated that Tenant intended to pursue all avenues of recovery that may lie against Landlord for fraudulent inducement and for its alleged direct, contributory and/or vicarious liability for the alleged Trade Dress infringement, as well as for any other claims Tenant may have against Landlord.

20.     The purported claims and/or defenses, as amplified in the letter from Tenant's attorney, are completely frivolous, and hence Tenant's statement in its estoppel certificate that it may have such claims and/or defenses was clearly made in bad faith and in breach of the Lease.

21.     Landlord never gave any oral assurance to Tenant that it would not place a competing business in the Building.  Moreover, a claim or defense of fraudulent inducement founded on Landlord's alleged oral assurances that it would not place a competing business in the Building is meritless as a matter of law because such promise directly contradicts both the "use" provision of the Lease (in which Landlord reserved the right to determine the uses to which other space in the Building shall be put) and the merger clause, which provides that the Lease contains all of the agreements and understanding relating to the leasing of the Premises and Landlord's

-6-

obligations, neither party has made or is making, and neither party in executing and delivering the Lease is relying upon any representations not set forth in the Lease, and all understandings and agreements relating to the leasing of the Premises are merged into the Lease, which alone fully and completely expresses their agreement.

22.    Tenant's made-up "belief" that Landlord may have approved and/or directed the other tenant to replicate Tenant's "distinctive Trade Dress", based on the "control" provision of Tenant's Lease, is completely ridiculous.  Rather, not only did Landlord not give such approval or direction to the other tenant, but the tenant's lease (unlike the Lease) does not grant Landlord the right to approve in its reasonable discretion what shall be placed, displayed or stored on all exterior signage areas and the storefront of the Premises and the façade of the Building.  In any event, Tenant's store does not have a "distinctive Trade Dress," but looks just like every other tourist souvenir and gift shop in New York City.  To the extent that Tenant and City Souvenirs' stores in the Building have the same look and feel, the same holds true for all the stores operated by these two long-standing competitors.  The similarity is a result of the nature of the souvenir- sale business, not any actions or omissions of Landlord.  Finally, since Tenant's stores are in public view, City Souvenirs would not have needed any assistance from Landlord if it wished to duplicate the look of Tenant's store.

23.    Clearly, Tenant has raised these baseless potential claims and defenses in bad faith because it was angry that Landlord had rented space in the Building to its competitor.  Even though City Souvenirs was operating its store for nine months, Tenant maliciously used Landlord's request for the Estoppel Certificate to get even with Landlord and exert economic pressure on Landlord to grant rent concessions.

24.     Accordingly, on September 21, 2015, Landlord served Tenant with a notice of default (the "Notice of Default") informing Tenant that its failure to furnish the Estoppel Certificate constituted a default under the Lease.  The Default Notice further informed Tenant that if Tenant fails to fully cure the default on or before October 26, 2015, which date is more than thirty (30) days after the date this notice shall be deemed to have been given, Article 18 of the Lease provides that Landlord may serve a notice of cancellation of the Lease on five (5) days' notice, and at the expiration of said five (5) days, the Lease and the term thereunder shall end and expire as fully and completely as if the expiration of such five (5) day period were the day therein definitely fixed for the end and expiration of the Lease and the term thereof, but Tenant shall remain liable for damages as provided in the Lease or pursuant to law.

25.     To date, Tenant has failed to cure its default under the Lease and continues to wrongfully refuse to provide a proper Estoppel Certificate.

26.     Tenant's refusal to furnish the Estoppel Certificate (sought by Landlord's prospective lender) precludes Landlord from obtaining financing for the Retail Unit which it would otherwise easily obtain.

## FIRST CLAIM
### (Declaratory Judgment)

27.     Plaintiff realleges paragraphs 1 through 26 as though fully set forth herein.

28.     Tenant contends that Landlord is in default under the Lease and that Tenant may have claims and/or defenses against Landlord for fraudulent inducement, infringement of Tenant's trade dress, and violation of the Lanham Act.

29.     Landlord disputes that it is in default under the Lease, and that Tenant may have claims and/or defenses against Landlord for fraudulent inducement, infringement of Tenant's trade dress, and violation of the Lanham Act.

-8-

30.     There is a justiciable controversy over the rights, obligations and liabilities of the parties with respect to the Lanham Act, the Lease, and Tenant's obligation to provide Landlord with the Estoppel Certificate.

31.     Landlord is entitled to a judgment declaring that Landlord has not infringed on Tenant's protectable trade dress.

32.     Landlord is entitled to a judgment declaring that Tenant has no rights or remedies, nor a valid claim, resulting from the purported fraudulent inducement of the Lease.

## SECOND CLAIM
### (Breach Of Contract)

33.     Landlord realleges paragraphs 1 through 32 as though fully set forth herein.

34.     The Lease is an enforceable contract between Landlord and Tenant.

35.     Tenant has breached Section 17.1 of the Lease by failing to execute, acknowledge and deliver a proper Estoppel Certificate.

36.     Tenant has breached Section 17.1 of the Lease by delivering a certificate which falsely states that Tenant may have claims and/or defenses against Landlord for its alleged fraudulent inducement and for its alleged direct, contributory and/or vicarious infringement of Tenant's rights with respect to a competing storefront retail business that has been opened by a different tenant in the building.

37.     Despite Landlord's demands, Tenant continues to refuse to deliver the Estoppel Certificate.

38.     Landlord has fully performed its duties under the Lease.

39.    Due to Tenant's breach of the Lease, Landlord has been unable to obtain financing from the Lender for the Retail Unit, and has been damaged in an amount to be determined at trial.

40.    Landlord is therefore entitled to a money judgment in an amount to be determined at trial.

## THIRD CLAIM
### (Tortious Interference With Prospective Economic Advantage)

41.    Landlord realleges paragraphs 1 through 40 as though fully set forth herein.

42.    Defendant misrepresented in its certificate that it may have claims and/or defenses against Landlord, knowing that its statement was false, and threatened to sue Landlord on these baseless claims.

43.    Defendant employed wrongful means to interfere with Landlord's prospective economic advantage with the Lender.  If defendant had commenced an action against Landlord, as threatened, such a lawsuit would qualify as "wrongful means."  Similarly, if Tenant had *no* intention to follow through on its threats, the economic pressure on Landlord resulting from the false Estoppel Certificate and bad-faith threats are likewise wrongful means.

44.    Defendant acted with malice in misrepresenting in its certificate that it may have claims and/or defenses against Landlord because it was angry Landlord had leased space to a competitor.

45.    The Lender would have entered into a contractual relationship (a loan agreement) with Landlord but for the intentional and wrongful acts of Tenant.

46.    As a result of Tenant's misrepresentations and refusal to provide the Estoppel Certificate, Landlord is unable to obtain a loan that it otherwise would have easily obtained.

47.    As a result of Tenant's misrepresentations, Landlord has suffered and will suffer damage in an amount to be proven at trial.

48.    Punitive damages should also be awarded as a result of defendant's malicious, unwarranted and unjustified tortious conduct.

## FOURTH CLAIM
### (Costs And Attorneys' Fees)

49.    Plaintiff realleges paragraphs 1 through 48 as though fully set forth herein.

50.    Section 21.7 of the Lease entitles Landlord to costs and attorneys' fees:

Whenever any default, request or inaction by Tenant causes Landlord to engage an attorney and/or incur any other expense, and in any action or proceeding which Landlord may prosecute or defend to enforce or defend its rights hereunder, Tenant shall pay all reasonable out-of-pocket costs incurred by the Landlord, including reasonable attorneys' fees to be fixed by the court, and such costs and attorneys' fees shall be made a part of the judgment [in] such action.

51.     Landlord is therefore entitled to a judgment awarding Landlord its costs and its reasonable attorneys' fees.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

**WHEREFORE** Plaintiff Thor Milford Retail LLC respectfully requests that the Court award Plaintiff—

(a)    On the first claim, a judgment declaring that (1) Defendant has no claims and/or defenses against Landlord for violation of the Lanham Act, 11 U.S.C. § 1125, or

-11-

infringement of defendant's trade dress; and (2)  Defendant has no claims and/or defenses

against Landlord for fraudulent inducement of the Lease.

        (b)     On the second claim, a money judgment against Defendant in an amount

to be determined at trial;

        (c)     On the third claim, a money judgment against Defendant in an amount to

be determined at trial, inclusive of compensatory and punitive damages;

        (d)     On the fourth claim, a money judgment against Defendant in respect of

Landlord's attorneys' fees incurred in connection with this action;

        (e)     Such other and further relief as the Court may deem just and proper.


**MATALON ♦ SHWEKY ♦ ELMAN PLLC**


By: _____

     Joseph Lee Matalon
    450 Seventh Avenue, 33d Floor
New York, New York 10123
(212) 244-9000
*Attorneys for Plaintiff*
 *Thor Milford Retail LLC*


Dated:  October 1, 2015